RECEIVED
DEC - 2 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JOHN WILLIE HAMILTON | CIVIL ACTION NO. 13-2702 |
| -vs- | JUDGE DRELL<br>MAGISTRATE JUDGE KIRK |
| BRIAN K. POWELL, CLINTON DUNN, &<br>VICTOR E. JONES, JR. | |

## RULING

Before the Court is a Motion for Summary Judgment (Doc. 18) filed by defendants Deputy Clinton Dunn, Sheriff Victor E. Jones, Jr., and Lieutenant Brian K. Powell. The time limits for responding have run, but no opposition has been submitted by Plaintiff, John Willie Hamilton. For the following reasons, the motion will be GRANTED.

I.  **Background**

The facts in this case arise from a visit Mr. Hamilton made to Wal-Mart in Natchitoches on the night of September 20, 2012. On that night, as Mr. Hamilton entered the store, he responded to a greeting by displaying his middle finger to Deputy Dunn and Lieutenant Powell. (Doc. 18-2). When those two men approached Mr. Hamilton to question him about the rude gesture, he told them "don't fucking talk to me." (Doc. 18-2). Deputy Dunn and Lieutenant Powell asked Mr. Hamilton to calm down and leave the store, and when he did not comply, they escorted him out.

Mr. Hamilton then called Sheriff Jones and told him that he had loaded guns and that he intended to return to Wal-Mart to shop. He also made several 9-1-1 calls and relayed this same information to the dispatcher. Sheriff Jones subsequently informed Lieutenant Powell of his phone call with Mr. Hamilton, and also warned Lieutenant Powell that Mr. Hamilton

had previously made threats against the police. This was Sheriff Jones's only involvement in this matter. (see Doc. 18-6). Lieutenant Powell then informed Wal-Mart about Mr. Hamilton's threats. Deputy Dunn obtained a warrant for Mr. Hamilton's arrest for two counts of Threatening a Public Official (La. Rev. Stat. § 14:122.2), two counts of Simple Assault (La. Rev. Stat. § 14:38), and one count of Attempted Terrorizing (La. Rev. Stat. § 14.40.1 and § 14:27).

Deputy Dunn and Lieutenant Powell had no further involvement in the events of the night (see Doc. 18-4). After the warrant was obtained, Lieutenant Carl Taylor and other deputies went to Mr. Hamilton's home to arrest him. Mr. Hamilton refused to answer their knocks at his door and called to them that he would not come outside. Because of this refusal, a SWAT team was activated to enter Mr. Hamilton's house. They entered his home, found him wrapped in a blanket in his attic, arrested him, and transferred him to the Natchitoches Parish Detention Center.[1]

Mr. Hamilton filed this complaint under 42 U.S.C. § 1983, alleging various constitutional violations and state law claims. He named only Deputy Dunn, Lieutenant Powell, and Sheriff Jones as defendants. All defendants filed the instant motion alleging that they are entitled to judgment as a matter of law because no constitutional violation occurred, that they are entitled to qualified immunity, and that respondeat superior liability (the only theory under which Mr. Hamilton makes claims against Sheriff Jones) does not apply in §1983 actions.

---

[1] Mr. Hamilton's complaint indicates that the charges against him were dismissed or that the Nachitoches Parish District Attorney refused to prosecute him. There is no further information about these charges in the record. Although this information is relevant to a malicious prosecution claim, it is ultimately immaterial, as we address below.

2

## II. Law & Analysis

### A. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). When the nonmovant ultimately would bear the burden of proof at trial, however, the movant may satisfy its summary judgment burden by showing the absence of evidence in the record to establish an essential element of the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). It is important to note the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

A court cannot grant summary judgment simply because the nonmoving party fails to oppose the motion, even if the failure to oppose violates a local rule. Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985). The moving party "has the burden of establishing the absence of a genuine [dispute] of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." Id. However, in this District, Local Rule 56.2 gives added direction when summary judgment is unopposed: "All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for the purposes of the motion, unless controverted as required by this rule." Therefore, as there is no opposition

3

to the current motion, all facts in the statement of material facts provided by Movants (Doc. 18-2) are deemed admitted for purposes of this Court's decision.

B.  Section 1983 Actions

42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. To state a viable claim under § 1983, "'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" James v. Tex. Collin Cnty., 535 F.3d 365, 373 (5th Cir. 2008) (quoting Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000)). Because § 1983 contemplates violations of both constitutional and statutory mandates, "'a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*.'" Equal Access for El Paso, Inc. v. Hawkins, 509 F.3d 697, 702 (5th Cir. 2007) (quoting Blessing v. Freestone, 520 U.S. 329, 340 (1997) (emphasis in original)).

In his complaint, Mr. Hamilton asserts that defendants committed violations of § 1983 in the form of "arrest," "detention and confinement," "conspiracy," and also in the form of "refusing or neglecting to prevent" a list of actions including "malicious prosecution,"

"malicious abuse of process," violations of the Due Process and Equal Protection clauses in the United States and Louisiana Constitutions, "false arrest and imprisonment," "assault," "battery," "conspiracy," and "intentional infliction of emotional distress." (Doc. 1).

Mr. Hamilton's claims of assault, battery, and intentional infliction of emotional distress are state law torts, not constitutional or federal law violations, so they are not cognizable under § 1983. However, this Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, so we address those claims as well. Additionally, because Mr. Hamilton asserts claims against Sheriff Jones only under the theory of respondeat superior liability, we address those claims in due course.

### C.   Deputy Dunn and Lieutenant Powell: Constitutional Claims

#### 1.   *Qualified Immunity*

Deputy Dunn and Lieutenant Powell assert that they are entitled to qualified immunity on Mr. Hamilton's constitutional claims under § 1983. Qualified immunity is an affirmative defense and generally protects government officials from liability for civil damages arising from the discretionary duties of their office so long as their actions are not clearly unconstitutional. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). If a defendant asserts qualified immunity, the burden is on the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. See McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002). An analysis of whether a defendant is entitled to qualified immunity consists

5

of two inquiries: (1) whether the defendant violated the plaintiff's constitutional rights; and (2) whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. See Whittington v. Maxwell, 455 F.App'x. 450, 456, 2011 WL 6446516 (5th Cir. 2011). It is within the discretion of the court to determine which prong of the qualified immunity analysis to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." Id. (quoting Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir.2005)). Qualified immunity will not be denied unless "existing precedent . . . placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987); Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Because Defendants raised the defense of qualified immunity in their Motion for Summary Judgment, the burden has shifted to Mr. Hamilton to show that they are not entitled to this protection. As we noted above, Mr. Hamilton has not filed a response to Defendants' motion, so we can only look to his complaint to determine whether he has anything to say to satisfy this burden. In our qualified immunity analysis, we first address whether Mr. Hamilton's constitutional rights were violated.

    2.    *False Arrest, Imprisonment, Detention, and Confinement*

Mr. Hamilton asserts that no "true facts warranting [his] arrest" and subsequent "detention and confinement" existed and that this arrest was "unlawful and malicious." (Doc. 1). Although Mr. Hamilton's complaint asserts that both Lieutenant Powell and Deputy Dunn "signed the criminal complaint to obtain a warrant against [him]," in actuality,

only Deputy Dunn signed the affidavit. Neither Defendant participated in Mr. Hamilton's actual arrest. Thus, only Deputy Dunn is potentially liable for any of Mr. Hamilton's arrest and detention claims.

Mr. Hamilton's claims of false arrest, imprisonment, detention, and confinement are analyzed together, because it is his arrest that led to his detention, and all of these claims involve the same probable cause requirement. A constitutional violation under the Fourth Amendment will only lie for any of these claims in the absence of probable cause for a suspect's arrest. See Brown v. Lyford, 243 F. 3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment also require a showing of no probable cause.").

Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). When a police officer applies for an arrest warrant, the qualified immunity shield applies unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. 335, 345 (1986). This is so because the warrant application is presented to and granted by an impartial magistrate. Thus, because here a warrant was issued, Deputy Dunn only loses the protection of qualified immunity if his warrant application displayed this extreme lack of probable cause.

Considering the totality of the circumstances surrounding the issuance of the arrest warrant for Mr. Hamilton, we find that Deputy Dunn was reasonable in believing that probable cause existed sufficient to charge Mr. Hamilton with Threatening a Public Official

(La. R.S. 14:122.2), Simple Assault (La. R.S. 14:38), and Attempted Terrorizing (La. R.S. 14:40.1). Mr. Hamilton initially made rude gestures and used threatening language to Deputy Dunn and Lieutenant Powell, who are both public officials. (Doc. 18-2). He followed those with actual threats to those two defendants, which threats reasonably put them in fear of a battery or imminent crime of violence (thus satisfying the requirements for simple assault and attempted terrorizing). (Doc. 18-2). Because we find that Deputy Dunn was reasonable in his belief that probable cause existed to arrest Mr. Hamilton for these crimes, we find that there was no Fourth Amendment violation in connection with his arrest, and thus that Deputy Dunn is entitled to qualified immunity on this claim. We thus will grant judgment as a matter of law in favor of Defendants as to Mr. Hamilton's claims of false arrest, imprisonment, detention, and confinement.

    *3.*     *Due Process and Equal Protection Violations*

Though Mr. Hamilton's claims under the Due Process and Equal Protection clauses of the Fourteenth Amendment[2] of the United States Constitution are somewhat difficult to decipher, his complaint does at one point specifically claim that his arrest and detention violated his due process rights and equal protection rights. (Doc. 1). Deprivations of liberty that are "pursuant to a warrant conforming . . . to the requirements of the Fourth Amendment" do not violate the Due Process clause of the Fourteenth Amendment. Baker v. McCollan, 443 U.S. 137, 144 (1979). Because we find that Mr. Hamilton's arrest was valid

---

[2] Mr. Hamilton alleges violations under the Due Process and Equal Protection clauses of both the Fifth and Fourteenth Amendments. However, the Fifth Amendment applies only to the federal government, while the Fourteenth Amendment applies to the states. Because Defendants are state actors, only the Fourteenth Amendment is applicable here.

8

under the Fourth Amendment, we also find that his constitutional right to due process was not violated.

Additionally, "[t]o state a claim under the Equal Protection Clause, a 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Johnson v. Morel, 876 F. 2d 477, 479 (5th Cir. 1989), abrogated on other grounds by Harper v. Harris Cnty., Tex., 21 F. 3d 597 (5th Cir. 1994). Mr. Hamilton's complaint makes no allegation that he was discriminated against by Defendants because of his membership in any class protected under the Fourteenth Amendment. Therefore, we find that Defendants are entitled to judgment as a matter of law regarding Mr. Hamilton's claim for violation of his equal protection rights.

Because we find no constitutional violation under either the Equal Protection or Due Process clause, we need not reach the second step of the qualified immunity analysis. Defendants are entitled to qualified immunity and we will therefore grant summary judgment as to all of Mr. Hamilton's claims for violation of his Due Process and Equal Protection rights.

   *4.* *Malicious Prosecution & Malicious Abuse of Process*

The Fifth Circuit has held that "a freestanding 42 U.S.C. § 1983 claim based solely on malicious prosecution [is] not viable." Cuarda v. Hous. Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010) (citing Castellano v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003)(en banc)). In order to pursue a malicious prosecution claim in a § 1983 action, a plaintiff must allege specific violations of constitutional rights that occur "in connection with a 'malicious prosecution.'" Castellano, 352 F.3d at 945.

Like claims for malicious prosecution, claims for abuse of process "fail as a matter of law unless founded in another constitutional right." Cevallos v. Silva, 541 Fed. App'x 390, 394 (5th Cir. 2013) (citing Castellano, 352 F. 3d at 945). Because we find no separate constitutional violation in this case, we find that Defendants are entitled to judgment as a matter of law on the claims of malicious prosecution and malicious abuse of process.

*5.    Conspiracy*

Conspiracy in and of itself is not actionable under § 1983; rather, "conspiracy may be charged under Section 1983 as the legal mechanism through which to impose liability on all the defendants without regard to who committed the particular act." Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995). If there is no violation under § 1983, then there is necessarily no conspiracy action. Because we have found, as a matter of law, that Defendants did not violate any constitutional rights, we hold that Mr. Hamilton does not have a viable conspiracy claim and thus will grant judgment as a matter of law in favor of Defendants on this claim.

**D.    Deputy Dunn and Lieutenant Powell: State Law Claims**

*1.    Battery*

In Louisiana, battery is "harmful or offensive contact with a person, resulting from an act intended to cause the [person] to suffer such a contact." Caudle v. Betts, 513 So. 2d 389, 391 (La. 1987). Liability for battery exists under Louisiana Civil Code article 2315, which states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2135 (A). In order to determine whether liability exists under this article, Louisiana courts use this four prong inquiry:

10

> I. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?
>
> II. Did the defendant(s) owe a duty to the plaintiff?
>
> III. Was the duty breached?
>
> IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

Mathieu v. Imperial Toy Corp., 646 So. 2d 318, 321-22 (La. 1994). Thus, we must determine whether Defendants owed a duty to Mr. Hamilton, whether they breached that duty, and if they did breach it, whether their conduct was a cause-in-fact of Mr. Hamliton's harm and if this harm was within the scope of protection their duty was designed to protect.

"Whether a duty is owed is a question of law." Hardy v. Bowie, 744 So. 2d 606, 615 (La. 1999). "Police officers owe a duty to the general public and not individuals." Goodlife v. State ex rel. Dept. of Transp. & Dev., 702 So. 2d 36, 39 (La. 1997). Thus, police officers owe a general duty to the public to perform their jobs "with due regard for the safety of all citizens" who may be affected by their actions. Justin v. City of New Orleans ex rel. Morial, 499 So. 2d 629, 631 (La. App. 4 Cir. 1986). Officers must act reasonably in the discharge of this duty. Hardy, 744 So. 2d at 614. The Defendants had a duty to act reasonably in dealing with Mr. Hamilton and to protect any members of the public who may have been harmed by Mr. Hamilton.

Next, we must determine if Defendants breached their duty. Whether a duty was breached is determined by the reasonableness of the action taken. Westmoreland v. City of Nachitoches, 771 So. 2d 715, 717 (La App. 3 Cir. 2000). Reasonableness is determined based on the totality of the circumstances. Kyle v. City of New Orleans, 353 So. 2d 969, 973

(La. 1977). Nothing in the record shows that any action taken by Deputy Dunn or Lieutenant Powell was unreasonable in light of their interaction with Mr. Hamilton. Additionally, we note that the only reference to a potential battery by any of the named Defendants Mr. Hamilton makes in his complaint is an allegation that "defendants forcibly expelled" him from Wal-Mart. However, Mr. Hamilton does not allege any specific harmful contact, and the Movants' Statement of Material Facts notes that Defendants Powell and Dunn "escorted" Mr. Hamilton out of Wal-Mart after he confronted them, which escort was certainly reasonable under the circumstances and caused by his conduct.

Because we find that there was no breach of Defendants' duties as police officers, we need not address the remaining prongs of the duty/risk analysis. Accordingly, we find that no battery is proven and we will grant judgment as a matter of law to Defendants on this claim.

   2.   *Assault*

Assault as defined by Louisiana law is "the imminent threat of a battery." Bulot v. Intracoastal Tubular Servs., Inc., 730 So. 2d 1012, 1018 (La. App. 4 Cir. 1999), abrogated on other grounds, 888 So. 2d 1017 (La. App. 4. Cir. 2004). Liability for assault also lies under Civil Code article 2315, and thus the same duty/risk analysis applies. Here again, we find nothing unreasonable about Defendants' conduct and only vague allegations of any harm. Mr. Hamilton's complaint makes general statements about "heated words" and forcible expulsion, but Movants' Statement of Material Facts shows that it was Mr. Hamilton who used "heated words." (Doc. 18-2). Lieutenant Powell and Deputy Dunn did escort Mr. Hamilton out of Wal-Mart after this exchange, but there is nothing to show that their actions put Mr. Hamilton in any sort of fear of imminent harmful or offensive contact, or that this

action was not reasonable under the circumstances. Thus, we again find that there was no breach of any duty and Defendants are entitled to judgment as a matter of law in their favor on Mr. Hamilton's assault claim.

### 3. *Intentional Infliction of Emotional Distress*

Intentional infliction of emotional distress is yet another claim under 2315 that is subject to the duty/risk analysis. White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991). However, there are additional elements a plaintiff must establish to recover for intentional infliction of emotional distress:

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

Id. Moreover, a defendant's conduct must "be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. Mr. Hamilton does not specify any actions on the part of any of the Defendants that rise to this level of "atrocious" behavior. There is nothing in the Movants' Statement of Material Facts that suggests Defendants' conduct was extreme or outrageous. Furthermore, Mr. Hamilton claims his "extreme mental and emotional distress" results from the events surrounding his eventual arrest, for which none of these Defendants were present. Therefore, we find that Defendants are entitled to summary judgment in their favor on this claim.

### 4. *Louisiana Constitution Claims*

Mr. Hamilton, finally, alleges violations of the his due process and equal protection rights under the Louisiana Constitution whenever he alleges violations of those rights under

13

the United States Constitution. The section in the Louisiana constitution that guarantees due process[3] "does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Progressive Sec. Ins. Co. v. Foster, 711 So. 2d 675, 688 (La. 1998). Therefore, "federal jurisprudence is relevant in determining the nature and extent" of due process protection in Louisiana. Plaquemines Parish Gov't. v. River/Road Constr., Inc., 828 So. 2d 16, 24 (La. App. 4 Cir. 2002). Because we have determined that there is no federal due process violation in this case, we hold that there is no concomitant Louisiana due process violation.

The Louisiana constitutional provision that guarantees Equal Protection to citizens of the state does differ from the corresponding clause in the federal Constitution, so federal Equal Protection jurisprudence is not necessarily determinative regarding that article. The article provides:

> No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

La. Const. art. I § 3. Mr. Hamilton does not cite any law that discriminates against him because of any of the classifications mentioned in § 3 above. He also does not cite any discrimination on the part of Defendants based on any of those classifications. We therefore determine that Defendants did not violate the Louisiana Constitution's Equal Protection guarantee. These claims will likewise be dismissed.

---

[3] La. Const. art. I, § 2

### E. Sheriff Jones

Sheriff Jones's only involvement in Mr. Hamilton's arrest involved a phone conversation in which Mr. Hamilton stated "his guns were loaded and he was going back to Wal-Mart to shop" and a subsequent phone call made by the Sheriff to Lieutenant Powell to warn him about Mr. Hamilton's threats. (Doc. 18-2). Additionally, the only time Defendant Jones is mentioned in the complaint is in an allegation that he "knew or should have known that the complaints initiated were groundless or not substantiated with true facts warranting arrest and prosecution of plaintiff" (Doc. 1), which apparently comprises Mr. Hamilton's malicious prosecution claim. However, the title of Mr. Hamilton's complaint names Defendant Jones as "respondeat superior for the other named defendants." (Doc. 1)

We discussed Mr. Hamilton's malicious prosecution claim above and find that it is without merit, but as to any other claims against Sheriff Jones based on a respondeat superior theory, we note the law provides § 1983 liability may not attach to supervisory officials for the actions of their subordinates under "any theory of vicarious or <u>respondeat superior</u> liability." <u>Estate of Davis ex rel. McCully v. City of N. Richland Hills</u>, 406 F.3d 275, 281 (5th Cir. 2005). Rather, a supervisor must be "personally" involved in a constitutional violation or there must be a "sufficient causal connection" between the supervisor's conduct and the violation at issue. <u>Evett v. DETNTFF</u>, 330 F.3d 681, 689 (5th Cir. 2003) (internal quotation marks omitted). The standard for determining supervisor liability in a § 1983 action is whether the supervisor "by action or inaction, demonstrates a deliberate indifference to a plaintiff's constitutionally protected rights." <u>Southard v. Tex. Bd. of Criminal Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997). There is nothing in the record to show that Sheriff Jones demonstrated any such indifference when he told Mr. Hamilton not to return to Wal-

Mart or when he warned Lieutenant Powell to "be on the look out" for Mr. Hamilton, the only two times Sheriff Jones was personally involved in these events. (Doc. 18-2).

It is possible for Mr. Hamilton to have a cognizable state law claim against Sheriff Jones in respondeat superior. Under Louisiana Civil Code article 2320, "masters and employers are answerable for the damage occasioned by their servants." La. Civ. Code art. 2320. And, specifically, "the employer of a police officer is liable for wrongful injury inflicted while performing his official duties." Bourque v. Lohr, 248 So. 2d 901, 904 (La. App. 3 Cir. 1971). However, in order for respondeat superior liability to attach, there must be a culpable act on the part of an employee for which an employer can be held liable. Here, we have determined that Deputy Dunn and Lieutenant Powell are not liable for any of the state law claims that Mr. Hamilton put forth. His respondeat superior claims must also, therefore, fail.

### III.   Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be GRANTED as to all Defendants. This suit will be DISMISSED WITH PREJUDICE.

SIGNED on this 2nd day of December, 2014 at Alexandria, Louisiana.

                                      DEE D. DRELL, CHIEF JUDGE
                                      UNITED STATES DISTRICT COURT